The FIVE PLATTERS, INC.

v.

Bernard PURDIE et al.

Civ. No. 73–462–B.

United States District Court, D. Maryland.

July 9, 1976.

Carl P. Fogel, Rockville, Md., Jules P. Kirsch, New York City, for plaintiff.

Bruce C. Bereano, Baltimore, Md., James I. Burkhardt, Alexandria, Va., for defendants.

## MEMORANDUM

BLAIR, District Judge.

"The Platters" was the name of one of the most popular singing groups in the nineteen fifties. The plaintiff, Five Platters, Inc., claiming that it owns the exclusive right to use of the Platters name in association with a musical entertainment group, has sued Bernard Purdie and others claiming that the defendants have infringed its service mark and unfairly competed. Damage issues were tried to a jury which concluded, in effect, that the defendants were guilty of piracy. The court concurs in the jury's canvass of events and will now assess the equitable claims for relief.

Five Platters, Inc. is a California corporation with its principal place of business in Las Vegas, Nevada. The principal defendants are Bernard Purdie, the leader of the defendants' singing group; Van Pressley, Jr., a long-time member of Purdie's singing group; Alva Ford Thompson, an entertainment booking agent headquartered in Alexandria, Virginia; Metropolitan Talent Agency, Inc., a Virginia corporation operated by Thompson; and New Century Corporation, also a Virginia corporation which manages the business of Purdie's singing group. Purdie and Thompson are principal shareholders of New Century Corporation as well as the president and chief executive officer, respectively. Thompson is the principal officer and owner of Metropolitan Talent. None of the individual defendants are citizens of either California or Nevada and no corporate defendant is incorporated in or has its principal place of business in either California or Nevada.[1]

The original complaint invoked the court's diversity jurisdiction and requested declaratory and injunctive relief as well as an accounting, compensatory and punitive damages for alleged violations of common law trademark rights and unfair competition. Certain defendants filed a counterclaim with their answer seeking declaratory relief, damages and a preliminary injunction against the plaintiff. After hearing, the defendants' motion for preliminary injunction was dismissed by the court on October 12, 1973. On May 15, 1973—six days after the suit was filed—plaintiff obtained registration of "The Platters" name as a service mark upon the Principal Register of the United States Patent and Trademark Office. Plaintiff thereafter filed a supplemental complaint alleging that in addition to the common law violations asserted in the original complaint the continuing acts of the defendants now violated the Lanham

1. Suit was filed in this district on May 9, 1973 when "The New Century Platters" appeared at a Montgomery County, Maryland night club known as "The Side Door." Accordingly, various other persons were also named as defendants. Moore, Cox, Bonds, and Treadwell were members of Purdie's group at the time suit was instituted but have since departed. None appeared at trial. H.Y.S.G., Inc., the owner of The Side Door, and Allan D. Massengill, one of the liquor-license holders, were dismissed by stipulation of the parties. A default has been entered against Sokolovic and Yoggerst, two other holders of the liquor license.

Act, 15 U.S.C. § 1051 *et seq.* Defendants broadened their counterclaim in response to the supplemental complaint so as to seek a cancellation of plaintiff's registration of the service mark.

As the court has already found, the parties are of diverse citizenship. Plaintiff has spent approximately $250,000 in efforts to protect and preserve its rights to the name "The Platters." Notwithstanding the fact that the jury assessed damages for the plaintiff in the amount of $3,001, the value of the rights in controversy is clearly in excess of $10,000, exclusive of interest and costs. *Glenwood Light and Water Co. v. Mutual Light, Heat and Power Co.*, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915). Subject matter jurisdiction exists therefore by virtue of diversity of citizenship. 28 U.S.C. § 1332. Additionally, the court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Some of the defendants were personally served in the State of Maryland. The remaining defendants were properly served under the Maryland Long Arm Statute, *Annotated Code of Maryland*, Courts and Judicial Proceedings, § 6–103, as persons transacting business in the state or persons deriving substantial revenue from services provided in the state. Thus, the court concludes that it has both subject matter and personal jurisdiction over the suit and the defendants.

Since both the supplemental complaint and the counterclaim sought damages, the court submitted those issues which were common to damages and the equitable claims to a jury for resolution. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The jury's verdict upon special interrogatories is attached to this memorandum as Appendix A. In substance, the jury determined that the plaintiff had a valid service mark in the name

"The Platters," that the name was properly registered in the Patent Office, that the defendants had infringed plaintiff's mark, that defendants had engaged in unfair competition with the plaintiff, and that the plaintiff was entitled to recover both compensatory and punitive damages. The court views the verdict as binding on those common issues which were submitted to the jury for resolution. *See* 9 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2338 at 135–137 (1971). Whether binding or not, the court is in complete accord with the resolution of the issues by the jury and adopts the answers that the jury gave.[2] There remain, however, issues of a purely equitable nature which the court must decide and for that purpose the evidence will be summarized briefly.

The lengthy history of "The Platters" need not be set forth *in extenso.* In 1953, Tony Williams, a young singer, sought the services of Buck Ram, a well-known and already established composer and arranger of popular music. Ram, who was impressed by Williams' voice, evinced an interest and Williams returned with three other young men with whom he was performing under the name "The Platters." Soon, one of the four men was replaced by another singer and at Ram's suggestion a young woman was added. Ram collected material for the new singing group, wrote songs for them, supervised their rehearsals and appearances, and made efforts to obtain engagements. On March 25, 1955, these efforts led to a contract between the singing group and Mercury Records under which they were to record as "The Platters." The first two releases of the group, "Only You" and "The Great Pretender," were extraordinarily successful, both selling millions of records and receiving industry recognition through the award of "Gold Records." With these two releases, "The Platters" as then composed[3] received broad recognition and attained success in the music field.

**2.** During the trial, the defendants abandoned all claim for damages asserted in their counterclaim and the plaintiff abandoned its claim for an accounting.

**3.** The four men who first performed under Ram's supervision were Tony Williams, Herbert Reed, David Lynch, and Alex Hodge. Other persons had also sung with Williams as "The Platters" before 1954. The group, however,

Throughout the remainder of the 1950's, the original Platters continued to be successful and performed and were recognized nationally and internationally as "The Platters." The group was distinctive because of its carefully choreographed performances and ballad style of singing. Ultimately the group recorded 15 songs which sold over one million records each.

In early 1956, the Five Platters, Inc. was formed as a California corporation and the five members of the group became the exclusive equal shareholders of the new corporation and exchanged their rights to the name "The Platters" in return for their stock interest. Shortly thereafter in 1956, each original Platter signed an employment contract with Five Platters, Inc. which also recognized the corporation as the sole and exclusive owner of the name "The Platters." In the early 1960's, the fortunes of the group declined for several reasons. One by one the members of the group left and the last to leave was Herbie Reed who departed in 1969. Each departing member was replaced and the group continued to perform as "The Platters" continuously until the present time. Four of the original Platters sold their shares in the corporation to Ram or Personality Productions, Inc., an artists management firm operated by Jean Bennett, an associate of Ram's and the current president of Five Platters, Inc. Each stock sale agreement acknowledged the corporation's exclusive right to use the name "The Platters" with a limited right reserved to the selling member of the original Platters to bill his or her individual performance as a person "formerly of The Platters." The group has continued under the musical direction of Ram and today uses the same general format for its performances as did the original Platters.

In the late 1960's and early 1970's, the nostalgic appeal of the music of the fifties caused a resurgence of popular interest in "The Platters" and the number and quality of the group's bookings increased. The renewed commercial success of "The Platters" has led to the formation of a number of imitation groups using the same format, singing the same songs, and billing themselves by the same name, or confusingly similar variations thereof, as the original Platter group. Since 1967, plaintiff has been in a constant battle to stem the tide of proliferating imitators. Bennett, acting on behalf of the plaintiff, has written over 250 registered letters to club owners and booking agents throughout the country asserting exclusive rights to the name "The Platters" and warning of others illegally using the name. Where indicated, these letters were followed up by telephone calls and personal visits by Bennett or plaintiff's attorneys and ultimately by numerous lawsuits in state and federal courts. In all, Five Platters, Inc. has spent in excess of $250,000 in efforts to preserve its right to the name "The Platters."

Among the imitators was a group in Canada under the management of a Bill Cunningham which billed itself as "The Fabulous Platters." In 1967 and 1968, this group hired the defendant Bernard Purdie as one of its members. Purdie eventually became the road manager for the group but then broke away and formed his own group of "The Fabulous Platters." [4] In 1970, Purdie contacted Bennett of Personality Productions, Inc., "The Platters'" manager, and sought her assistance in promoting his group which he represented was performing

---

had attained no significant recognition prior to 1954 and there is no evidence that persons associated with the group prior thereto have ever claimed a right to the use of the name. Hodge was replaced by Paul Robi in early 1954 and Zola Mae Taylor was added in May 1954. Williams, Reed, Lynch, Robi and Taylor performed on the successful recordings of the 1950's and are referred to in this memorandum as the "original Platters."

**4.** Purdie testified that he began singing professionally in 1946 and appeared with various groups in the Maryland-Virginia area in the late forties and early fifties. In the late fifties, he moved from Norfolk, Virginia to Quebec, Canada. Purdie does not read or write music and has not recorded since the mid-fifties when a group called "The Avalons" attained moderate success in the Maryland area. The uncontradicted evidence is that Purdie is a talented performer.

under the name "The Ecstatics." As a result of his contact with Bennett, a meeting was arranged in her New York office in January or February 1971. At the time of these discussions, Purdie's group was actually performing under the name "The Fabulous Platters" rather than "The Ecstatics" as he represented to Bennett. At the trial Purdie admitted that he had lied to Bennett about the name of his group because he wanted her assistance as a management agent and knew that it would not be forthcoming if she were aware that his group was actually performing as "The Platters."

In 1971, Bennett became aware of Purdie's misrepresentation through a lawsuit in which Purdie was involved in Ohio where his group had been appearing under the billing of "The Fabulous Platters." Bennett observed a performance of Purdie's group and concluded that the group had talent. She thereafter arranged a meeting between Purdie and Ram in August of 1971. The meeting led to a personal management contract between Purdie and Personality Productions, Inc. under which Ram and Bennett undertook to manage, advise, and assist Purdie in the presentation of his group in return for which Personality Productions, Inc. would receive 15% of Purdie's gross earnings. The agreement provided that Purdie's group would henceforth be billed as "The Buck Ram Flares" which was the name of a group which had once performed under Ram's direction and which had disbanded in the 1960's. Under the contract, Purdie was responsible for obtaining his own bookings since Personality Productions, Inc. was a management rather than a booking agency. Nevertheless, Personality sought to assist Purdie in obtaining bookings whenever it could do so.

Purdie's primary American booking agent was the defendant Thompson who owned and operated Metropolitan Talent Agency, Inc. located in Alexandria, Virginia. Thompson first met Purdie in 1968 or 1969 when the latter was performing as "The Fabulous Platters" at a Waldorf, Maryland night club. Shortly thereafter, Purdie sought bookings through Thompson and

Thompson obtained bookings for Purdie at various engagements in Maryland and Virginia areas, often at military bases. In late 1971, Purdie advised Thompson of his new contract with Personality Productions, Inc. and of the change in the name of his group to "The Flares." Thompson testified that he had difficulty in obtaining bookings for Purdie's group as "The Flares" and in particular could not obtain engagements in areas where Purdie had appeared as "The Platters" prior to his contract with Personality Productions, Inc. His testimony was that in order to obtain bookings for Purdie it was desirable and in some instances necessary to book the Purdie group with some variation of the name "The Platters."

These problems were brought to Bennett's attention and after consideration Bennett authorized the booking of Purdie's group under the billing "The Five Platters, Inc. presents The Buck Ram Flares." Without the knowledge or authorization of Bennett or anyone else associated with the plaintiff, Thompson and Purdie expanded this limited license into other billings such as "The Flares, formerly The Platters" and "The Flares featuring The Platters." Purdie had pictures made of the group at the request of Bennett and sent them to her with the caption "The Buck Ram Flares." Thompson, however, without Bennett's knowledge or authorization, changed the picture captions to include and give particular emphasis to the words "The Platters" before distributing the pictures to his prospective customers. As Purdie's manager, Bennett's approval was required for all of his performance contracts. In certain instances, the evidence showed that Thompson had, without authority, booked Purdie by using the name "The Platters" in an unauthorized manner but executed the booking contracts so that the unauthorized act would not come to Bennett's attention. In other instances, Thompson had booked Purdie with an unauthorized use of the name "The Platters" and in practical effect forced Bennett to accept them because of Purdie's desperate need for employment to keep the group from disbanding. The evidence shows, however, that at no time did

Bennett or Five Platters, Inc. give either Purdie or Thompson a general license to use the name "The Platters."

The defendants' reliance upon acquiescence of the plaintiff is strongly undercut by their own evidence. Thompson admitted in testimony that he had never tried to book the Purdie group in locations where they had not previously performed under any name which did not feature the words "The Platters." In 1972, Purdie's group was booked into the Moonraker Club in Virginia Beach, Virginia, at which time they were billed as "The Platters." Both Ram and Bennett attended the club in the course of the group's two-week engagement. The club manager, Chester Rodio, testified that Ram made no objection to the billing and advised him that Purdie's group could use the name "The Platters." Plaintiff's evidence was to the contrary and is the more credible. The Moonraker Club engagement in 1972 was in fact one of those instances where the booking contract, which would have revealed the billing of the group, was sent directly by the club manager to Purdie in Canada, thereby circumventing Bennett, the group's manager. Plaintiff's credible evidence was that this was but one of many instances where plaintiff and Personality Productions, Inc. believed that Purdie's group was being billed as "The Buck Ram Flares" when in fact it was appearing without knowledge of the plaintiff under some variation of the name "The Platters."

In early 1973, Thompson advised Purdie that the management contract with Personality Productions, Inc. was unfair and suggested that he consult a lawyer.[5] Shortly thereafter, Purdie and Thompson formed The New Century Corporation and changed the name of the Purdie group to "The New Century Platters." From the time of its formation, The New Century Corporation has been the employer of the Purdie group which has performed up to and including the time of trial under the name "The New Century Platters" and variations thereof. Promptly upon learning of Purdie's new business arrangements, Bennett sent letters to Thompson and Purdie advising them that Five Platters, Inc. claimed exclusive right to the use of the name "The Platters" and warning of its intent to protect its rights in that name. When the Purdie group appeared at the Side Door supper club in Maryland in the spring of 1973, this suit was begun. Since that time, Five Platters, Inc. has sent letters to booking agents and night club owners warning them of defendants' infringement. Plaintiff has also sued the defendants in various jurisdictions including Massachusetts, North Carolina and Missouri. Despite plaintiff's efforts, the Purdie group continues to perform and has substantial booking contracts to perform in the future under some variation of the name "The Platters." Additionally, The New Century Corporation has filed for cancellation of plaintiff's registered service mark in the United States Patent and Trademark Office and that proceeding has been held in abeyance pending the outcome of this litigation. 15 U.S.C. § 1119.

The similarity between Purdie's group and plaintiff's Five Platters group is remarkable and deliberate. Both groups compete for employment in night clubs and other places of public entertainment. Both groups appear in the same general areas. Both groups present four men and one woman in uniform costume with similar coordinated dance steps and harmonic musical arrangements. Both groups devote a portion of their performance to a medley of "The Platters" songs recorded by the original Platters in the 1950's. Both groups appear under essentially the same name because "The Platters" is emphasized by both groups and "New Century" is subordinated in the Purdie billings if used at all.

The likelihood of confusion due to these similarities is heightened by the fact that

---

5. Purdie acknowledged in testimony that he owed Personality Productions, Inc. unpaid commissions under the management contract. Those commissions are the subject of a related action pending in this court, *Personality Productions, Inc. v. Bernard Purdie,* Civil No. 73–596–B, in which Personality has sued Purdie for breach of contract and payment of commissions due.

the entertainment establishments at which the Purdie group appears frequently advertise their appearances without any distinguishing references whatever. Defendants' Exhibit 17 is an advertisement for the May engagement at the Side Door supper club of the Purdie group which highlights the words "The Platters" and denigrates the words "The New Century." An advertisement for the Purdie group's appearance at Joe Namath's restaurant in Birmingham, Alabama is of a like nature. Additionally, the advertisement for the Birmingham appearance also states "doing the ever popular Platter songs and contemporary tunes . . . " (D. X. 18). An advertisement for the Purdie group's appearance at the Silver Slipper dance club in Fredericksburg, Virginia characterizes the group as "National recording artists" when in fact the Purdie group has never recorded any music. (D. X. 20).

Plaintiff's evidence also included pictures of advertisements used outside the Image supper club in St. Louis, Missouri. This advertisement not only gave undue emphasis to the words "The Platters" and underplayed the words "The New Century" but also referred to the Purdie group as "The hottest group of the fifties and sixties with 15 Gold Records." (P. X. 6A–6E). The advertisement was false in that "The New Century Platters" did not exist in the fifties and sixties and has never recorded any music. In the very week that this trial began, the Purdie group appeared once again at the Moonraker Club in Virginia Beach, Virginia. The evidence showed that the marquee outside the club advertised the group as simply "The Platters." Purdie acknowledged that on occasion clubs at which he was booked to appear sponsored radio advertisements featuring the group as "The Platters" and played some of the recordings of the original Platters in the course of the advertisement.

Other evidence presented by the defendants graphically illustrated an intention to cause confusion and to exploit the good will associated with plaintiff's name. Defendants produced a collage of articles and pictures which they claimed was prominently displayed at each place they performed and which purportedly gave a true history of "The New Century Platters." Included within the collage was an article appearing in the February 20, 1976 edition of the *St. Louis Post-Dispatch* which discussed the then pending litigation by plaintiff against the defendants concerning the Purdie group's appearance at the Image supper club in St. Louis. In pertinent part, the article reads:

The group was solid for five years, then Williams left and was replaced by Sonny Turner in 1960. In the middle '60's Zola [Mae Taylor] departed and then Robi. In 1969 only Herb Reed, who sang bass, remained.

"That's when I replaced Reed," said Bernard Purdie, who now sings bass for the New Century Platters. "Buck Ram was still managing the Platters."

Van Pressley, Jr., who is the lead tenor with the New Century Platters, said, "I was hired by Ram about the same time, 1970 maybe."

You replaced Sonny Turner?

"No. By the time I joined the Platters there had been 15 to 20 tenors in that spot. In fact, there were probably two Platters groups by then, both managed by Ram. We were playing different circuits, and Ram was getting booking and management fees for both.

"I found out about a third group called the Platters when Ram asked me to join the Platters he had working on the West Coast. That was in 1973, and in fact, I worked with the West Coast Platters for a while. . . .

\*　　\*　　\*　　\*　　\*　　\*

"In fact, there was a time when I had to sing the track on television because the lead tenor in Buck Ram's Platters didn't know the part."

All of the attributed statements contained in the above quotation were untrue. Purdie acknowledged that he never replaced Herbert Reed and although Pressley performed as a preliminary act for "The Platters" for a brief period of time and may

have substituted for one of the tenors on one occasion, he was at no time a regular performer with "The Platters" and certainly never sang for a television sound track. Though Pressley and Purdie denied making the statements attributed to them in the above-quoted article, they acknowledged including the article in the collage displayed at the places where they performed and that the collage purported to represent an accurate history of the Purdie group.

While it is neither useful nor necessary to set forth every instance of confusion and deception, one further instance of a deliberately deceitful act by the defendants is noteworthy. On April 3, 1974, Thompson, acting for himself and the other defendants, drafted and sent out under the signature of Purdie as president of The New Century Corporation over 100 letters to night club owners or other entertainment purchasers. The import of the letter is unmistakable:

> We THE NEW CENTURY PLATTERS, are tired. We're tired of being confused with such inferior group's as THE BUCK PLATTERS (sic) . . . The only thing we ever had in common was the NAME, so we've changed it. We are now ending the confusion by sending out this announcement. "MY PRAYER" to you is beware of "THE GREAT PRETENDER" who offers bargain prices to "ONLY YOU" and "SMOKE GETS IN YOUR EYES" from all the polution (sic). (P.X. 43).

With this letter the defendant-imitators at once declared the plaintiff's group not only to be imitators but inferior imitators at that. Defendants' motivation does not have to be inferred. Both Purdie and Thompson were explicit in their testimony. By using the name "The Platters" or variations thereof which featured the same words, they were able to obtain more and better employment for the Purdie group. The evidence is quite clear that they were successful in this quest.

The jury found, and this court agrees, that the five "original Platters" adopted and used the name "The Platters" with the intention of making it their service mark. The name is a "strong" mark in that as the name of a singing and entertainment group it is arbitrary and distinctive, bereft of any descriptive meaning.[6] It is inherently distinctive. See National Shoe Stores Co. v. National Shoes of N. Y., 213 Md. 328, 131 A.2d 909, 912 (1957). By virtue of the widespread circulation of the successful records recorded by "The Platters" and the group's many public performances as well as the efforts of Ram and Bennett in promoting and producing the group, the name "The Platters" means in the minds of the consuming public the particular singing group performing under that name. Therefore, "The Platters" has developed a secondary meaning. Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245, 1248 (4th Cir. 1970); Little Tavern Shops v. Davis, 116 F.2d 903, 906 (4th Cir. 1941).

The defendants' name infringes upon the service mark of the plaintiff if the two names are sufficiently similar that the defendants' name creates a likelihood of confusion in the minds of a substantial number of ordinary consumers of entertainment, purchasing with ordinary caution. Dwight S. Williams Co. v. Lykens Hosiery Mills, 233 F.2d 398, 401 (4th Cir. 1956). Factors to be assessed include the strength of the service mark and the similarity between the services of the two groups and the similarity and sophistication of the customers to whom the groups appeal. Durox Co. v. Duron Paint Manufacturing Co., 320 F.2d 882, 885 (4th Cir. 1963). Evidence of actual competition between the two singing groups, the sound of the respective names and their visual similarity, and the intent of the defendants in choosing their name is also relevant in assessing the likelihood of confusion. AMP, Inc. v. Foy, 540 F.2d 1181, at 1185–1186 (4th Cir. 1976); Communica-

---

6. Platter is a generic term as applied to dishes. As used by radio announcers to describe a phonograph record, it is a colloquial term and to that extent might arguably be considered suggestive rather than arbitrary or fanciful. General Shoe Corp. v. Rosen, 111 F.2d 95, 98 (4th Cir. 1940).

*tions Satellite Corp. v. Comcet, Inc., supra,* 429 F.2d at 1251 (4th Cir. 1970); *A & H Transportation, Inc. v. Save Way Stations, Inc.,* 214 Md. 325, 135 A.2d 289, 295 (1957). The overwhelming evidence indicated that the defendants' use of the name "The Platters" is likely to cause confusion between their group and the plaintiff's group. The evidence indicated also that unless restrained defendants' use of the name is likely to cause confusion in the future.

■ There was no sufficient evidence from which the jury could have concluded that the plaintiff has abandoned its rights in the name "The Platters." Abandonment takes place when the owner discontinues use of a tradename with the intention not to resume its use. 15 U.S.C. § 1127; *Sherwood Co. v. Sherwood Distilling Co.,* 177 Md. 455, 9 A.2d 842, 844 (1939). Plaintiff's occasional use of the Platter name as "The Buck Ram Platters" does not constitute an abandonment of the name and it creates the same commercial impression as the words "The Platters." McCarthy, *Trademarks and Unfair Competition,* § 17.10 (1973); *Drexel Enterprises, Inc. v. Richardson,* 312 F.2d 525, 527 (10th Cir. 1962). Abandonment is an affirmative defense and the burden of proof rests upon the defendants. *Friedman v. Sealy, Inc.,* 274 F.2d 255, 257 (10th Cir. 1959). Defendants failed to meet that burden.

■■ The defendants' contentions that plaintiff has lost any rights it had in the words "The Platters" because of uncontrolled use of the name by others and because the name has become generic is likewise unavailing. The evidence showed that plaintiff has been vigilant and determined in efforts to police and preserve the rights it conceives it has in the name "The Platters." It has sought through warnings, negotiations, threats, and numerous lawsuits to preserve and to protect the name. The name does not indicate merely a nature or class of service to the consuming public, *Feathercombs, Inc. v. Solo Products Corp.,* 306 F.2d 251, 256 (2d Cir. 1962), except insofar as the style of music and format of presentation is associated in the consuming

public's mind with the five recording artists who perform under the aegis of Buck Ram.

■ There was no credible evidence from which the jury could find or from which this court finds that the plaintiff was guilty of unclean hands by presenting its group as the original Platters when in fact none of the persons now performing in the group were members in the 1950's. The credible evidence revealed that although the plaintiff's group referred to itself during its performances and in its advertising as "The Platters" it at no time indicated that any of the present members were with the original Platters. Similarly, the jury concluded, as does this court, that the plaintiff had neither acquiesced in the continued use of "The Platters" name by the defendants, nor been guilty of laches in enforcing its rights against the defendants.

■ The jury concluded, as does the court, that the defendants had infringed upon the plaintiff's service mark and had engaged in acts of unfair competition by attempting to cause confusion among the consuming public. *See National Shoe Stores v. National Shoes of N. Y.,* 213 Md. 328, 131 A.2d 909, 912 (1957). The court also finds that from 1971 up to and including the time of trial, defendants engaged in a deliberate course of conduct in using the name "The Platters" so as to cause a likelihood of confusion with the plaintiff's group and to take advantage of plaintiff's good will. With full knowledge of plaintiff's claim to exclusive rights in the name, defendants, even while under contract to Personality Productions, Inc., used the name "The Platters" and deceptively led Ram and Bennett into believing that they were performing as "The Flares."

■ After the formation of The New Century Corporation, the defendants chose to perform under a name which they knew would cause confusion between themselves and the plaintiff's group among the public. Defendants protested that they believed the name "The New Century Platters" was distinctive and that they made efforts to prevent billings and advertisements which

would imply that their group was the same as the plaintiff's group or that it was the same as the original Platters. Assuming arguendo that defendants acted in good faith, their good faith belief would not be a defense to a service mark infringement. Defendants were on notice of plaintiff's claim to the exclusive right to the name long before they formed "The New Century Platters" and The New Century Corporation. They had a duty to choose a name which would avoid all possibility of confusion. *AMP, Inc. v. Foy,* 540 F.2d 1181, at 1186–1187 (4th Cir. 1976); *Allen v. Standard Crankshaft and Hydraulic Co.,* 323 F.2d 29, 36 (4th Cir. 1963). As noted earlier, however, it is apparent that the actions of the defendants were not taken in good faith.

■ Defendants sought to show in the course of the trial that Five Platters, Inc. suffered from technical invalidity under California law at the time of its incorporation, that Ram was guilty of undue influence and overreaching in the establishment of the corporation and the assignment of the name "The Platters" by the original singing group, and that Ram and Personality Productions, Inc. acquired the stock of four of the five members of the original group without consideration. The evidence suggested that there was some technical deficiency in the corporation at its inception. It also showed, however, that the Five Platters, Inc. is a valid and subsisting corporation at this time under California law, that each of the five original Platters received an equal share of stock in the corporation in exchange for transfer of the name "The Platters," that Ram and each of the original five Platters have at all times recognized the existence of the corporation, treated it as a legal entity and while associated therewith operated under its aegis. The evidence further showed that each of the four original Platters who transferred stock to Ram or Personality Productions, Inc. received valuable consideration therefor and that none of such persons has at any time attacked the validity of the corporation or the issuance of its stock. Herbert Reed is the only remaining original Platter

who holds stock in the corporation. Although under an agreement settling litigation he has reserved the right to litigate at any time in the future ownership of the outstanding shares of stock in the corporation, he has neither challenged the corporation's existence nor its original issuance of stock. Whatever merit defendants' contentions in this respect may have—and they would appear to have none—the court concludes that the corporation's rights to maintain the claims in suit are in no way impaired.

■ After finding that defendants were guilty of service mark infringement and unfair competition, the jury assessed damages in favor of the plaintiff in the amount of $1.00 as compensatory damages and $3,000 as punitive and exemplary damages. Irrespective of the damages to which plaintiff would be entitled under the Lanham Act, the jury's verdict and this court's findings are based on evidence that defendants infringed plaintiff's mark and unfairly competed on numerous occasions, both in the State of Maryland and elsewhere. Although there was not proof of the actual losses and expenses that plaintiff incurred, the evidence did show that plaintiff sustained substantial damages in an unspecified amount which is difficult of precise proof. Hence, compensatory damages in the amount of $1.00 were assessed. This was not a case of a mere *"technical invasion of the plaintiff's rights," Shell Oil Co. v. Parker,* 265 Md. 631, 291 A.2d 64, 71 (1972) (original emphasis). Accordingly, the award of nominal compensatory damages supports a verdict for punitive damages. *See generally,* 8 *M. L. E.,* Damages, § 111 at 84. Maryland law allows an award of punitive damages for unfair competition where the injury complained of has been inflicted maliciously, wantonly or fraudulently, *GAI Audio of N. Y., Inc. v. Columbia Broadcasting System, Inc.,* 27 Md.App. 172, 340 A.2d 736, 753–755 (1975). The evidence supports the jury's verdict awarding punitive damages against all defendants other than Moore, Cox, Bonds, Treadwell, Sokolovic and Yoggerst.

Defendants counterclaimed for cancellation of the registration of "The Platters" as plaintiff's service mark in the Patent Office because of alleged false or fraudulent representations made in the application for the registration. Because the validity of that registration had bearing on the weight that the jury was to give to the registration as evidence of the plaintiff's entitlement to exclusive use of the name "The Platters," the cancellation issue was also submitted to the jury which found in favor of the plaintiff. To prevail on this issue, the defendants were required to show that the statement was knowingly false or fraudulent. *Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co.*, 339 F.Supp. 973, 984 (M.D.Tenn.1971), *aff'd*, 470 F.2d 975 (6th Cir. 1972); *Travelodge Corp. v. Siragusa*, 228 F.Supp. 238, 243 (N.D.Ala.1964), *aff'd*, 352 F.2d 516 (5th Cir. 1964). Statements of honest, but perhaps incorrect, belief or innocently inaccurate statements of fact are insufficient as are knowing misstatements which would have a *de minimis* effect on the validity of the service mark. *Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co.*, *supra*; *DeMert & Dougherty, Inc. v. Chesebrough-Pond's, Inc.*, 348 F.Supp. 1194, 1197 (N.D.Ill.1972); *Wrist Rocket Manufacturing Co. v. Saunders*, 379 F.Supp. 902, 921–22 (D.Neb.1974). The jury's findings in this regard were fully supported by the evidence and are accepted by the court.

Since the plaintiff seeks equitable relief in addition to damages, the court must look at the evidence to decide the likelihood of future injury to the plaintiff and the extent to which, if at all, that injury may be cured by legal relief. Aside from the deliberately exploitive conduct of the defendants, the defendants' use of the name "The New Century Platters" inherently infringes upon the plaintiff's service mark. Thompson testified that the Purdie group is booked for engagements under the name "The New Century Platters" through the end of 1976. Given the defendants' reckless disregard for the plaintiff's rights in the past, the court concludes that nothing short of injunctive restraint will prevent the defendants from infringing on the service mark in the future. Nor will legal relief suffice to redress future injury. Plaintiff has already filed suit against the defendants in at least four jurisdictions and would have to renew this difficult litigation wherever defendants were to be found using the name "The New Century Platters" or variations thereof. Moreover, the damage caused by confusion among the public is incapable of precise financial measurement given the intangible nature of an asset such as good will. In these circumstances, plaintiff is entitled to an injunction. *See Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1253 (4th Cir. 1970); *Lone Ranger, Inc. v. Cox*, 124 F.2d 650 (4th Cir. 1942). In view of the peripatetic nature of the two singing groups involved, the injunction should be nationwide in scope. The Lanham Act provides for nationwide enforcement of injunctions protecting federally registered trademarks, 15 U.S.C. § 1116, and in some instances the decree may also restrain extraterritorial acts by American citizens. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–86, 73 S.Ct. 252, 97 L.Ed. 252 (1952). In a proper case, Maryland courts of equity with *in personam* jurisdiction over a defendant will restrain him from committing acts of infringement outside of the state where required to protect the rights of a trademark owner. *Cf. Donigan v. Donigan*, 208 Md. 511, 119 A.2d 430, 434–35 (1956). The evidence showed that plaintiff's group has performed and is performing throughout the country both in live appearances and on television and the good will associated with "The Platters" exists in all geographical areas in the United States. Though the activities of the defendants were confined primarily to the eastern half of the United States and Canada, they never attempted to show a prior use or lack of competition between the two groups in any distinct geographic area. Plaintiff is also entitled to the destruction or obliteration of all signs, pictures, advertisements, stationery and paraphernalia in possession of the defendants which bear the word "Platters" and any paraphernalia used to make them.

15 U.S.C. § 1118; *Feathercombs, Inc. v. Solo Products Corp.,* 306 F.2d 251, 258 (2d Cir. 1962). Since the defendants Moore, Cox, Bonds, and Treadwell are no longer performing with the Purdie group and there was no evidence that they will do so in the future or will otherwise infringe upon the service mark, they will not be restrained by the court's injunction. The same applies to the defendants against whom default was taken, Sokolovic and Yoggerst. Since the court will retain jurisdiction in the premises, persons not named in the injunction may be restrained for good cause shown upon proper application in the future.

■■ Finally, plaintiff claims that it should be allowed costs and attorneys' fees. 15 U.S.C. § 1117. The Lanham Act was amended effective January 2, 1975 to provide that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." P.L. 93–600, 88 Stat. 1955. The purpose of the amendment was to allow fees to the successful party "in infringement cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful,'" S.Rep.No. 93–1400, 93rd Cong., 2d Sess. (1974), 1974 U.S.Code Cong. & Admin.News 7133 (1975). Plaintiff argues that the jury's award of punitive damages necessarily involved a finding of malicious conduct on the part of the defendants and, therefore, supports an award under the statute. By its terms, however, the amendment is inapplicable to any suit, proceeding or appeal pending as of the effective date of the Act. Since this case was filed in 1973, it is governed by *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 720–21, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), which disallows an award of attorneys' fees unless the case falls within a recognized equitable exception to the "American rule." This case does not fall within the exception. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Plaintiff is entitled to recover the costs of this suit. *See* 28 U.S.C. § 1920, *Fleisch-*

*mann Distilling Corp. v. Maier Brewing Co., supra,* 386 U.S. at 720 n. 15, 87 S.Ct. 1404.

In addition to the findings and conclusions set forth above, the court enters the following findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

### Findings of Fact

1. The court has jurisdiction over the parties in the subject matter of this action.

2. Plaintiff acquired the exclusive right, title and interest in and to use of the tradename and service mark "The Platters" together with the business and good will identified and symbolized by that name and mark from the five persons who recorded nationally known hits under the name "The Platters" in 1954 and 1955 and who first adopted and used that name in 1954 in interstate commerce with the intention of making "The Platters" their tradename and service mark for entertainment services.

3. Since plaintiff's acquisition of "The Platters" name and mark and the business and good will associated therewith, plaintiff has been and continues to be the owner of the tradename "The Platters" and of the service mark "The Platters" for entertainment services—namely, comedy and vocal and instrumental music rendered by a group. Plaintiff is also the owner of United States Registration No. 959,115 of said mark and of the good will associated with the use and symbolized by said name and mark. Registration of plaintiff's service mark "The Platters" in the United States Patent and Trademark Office was issued upon an application filed by plaintiff to register said mark. Plaintiff made no knowingly false or fraudulent statements in the application for said registration.

4. "The Platters" name and mark has been and continues to be known as the hallmark identifying and distinguishing plaintiff's style and rendition of music. Because of plaintiff's long and continuous use of "The Platters" name and mark, together with plaintiff's substantial and extensive efforts to promote a conscious connection between "The Platters" name and the

plaintiff's group in the minds of the public, and the commercial success of plaintiff's singing group under "The Platters" name and mark, the tradename and service mark "The Platters" has had and continues to have a secondary meaning of great value in this district and elsewhere throughout the United States as identifying to the public plaintiff and its authorized agents as the source of entertainment services rendered and sold under the tradename and service mark "The Platters," and as distinguished from entertainment services rendered by others.

5. Plaintiff has taken reasonable steps by means of warnings, letters, and lawsuits to control unauthorized use by others of "The Platters" mark.

6. Plaintiff's name and mark "The Platters" has not become generic.

7. Plaintiff has not misrepresented to the public the composition of its singing group and, in particular, plaintiff has not misrepresented to the public that its singing group was composed of the same or some of the same persons who were members of the group when it first attained national recognition and popularity in the 1950's, even though the composition of that group has changed from time to time since the 1950's.

8. Defendants' objections to plaintiff's federal registration of "The Platters" as a service mark, Registration No. 959,115, registered May 15, 1973, are not valid.

9. Since a date prior to the commencement of this suit, defendants had actual knowledge of the prior use by plaintiff of the tradename and service mark "The Platters" to identify and make known plaintiff's entertainment business in connection with the marketing and rendering of plaintiff's entertainment services under the said tradename and service mark.

10. Without authorization by plaintiff and despite warnings from plaintiff, defendants adopted and used and induced and caused unauthorized use by persons not authorized or employed by or associated in any way with plaintiff or plaintiff's "The Platters" tradename and service mark in interstate commerce and in commerce substantially affecting interstate commerce in this district and elsewhere in the United States to promote, advertise, and sell entertainment services under the names "New Century Platters," "The Platters," and "Platters."

11. Because of the secondary meaning and valuable good will acquired by and associated with plaintiff's name and mark "The Platters" and the services rendered thereunder, and because there is substantial similarity between the sound and appearance of plaintiff's name and mark "The Platters" and defendants' name "New Century Platters," as well as between the format and style of plaintiff's singing group under plaintiff's name and mark, defendants' use of the word "Platters," alone and in conjunction with other words, has created a likelihood of confusion among the type of consumers to whom plaintiff's group and defendants' group appeal.

12. Defendants made unauthorized use of the word "Platters" and of plaintiff's name and mark "The Platters," and defendants chose the name "New Century Platters" with the intention of exploiting the popular recognition of plaintiff's name and mark "The Platters," so as to cause a likelihood of confusion among a significant number of persons in the consuming public. Defendants by their intentional use of the word "Platters" and of plaintiff's name and mark "The Platters" attempted to mislead and deceive the consuming public concerning the origin and composition of defendants' singing group. Defendants by their intentional use of the word "Platters" and of plaintiff's name and mark "The Platters" further attempted to cause confusion and to mislead and deceive the consuming public concerning the origin and composition of defendants' singing group by making statements to the consuming public that the defendants' singing group was composed of former members of plaintiff's "The Platters" singing group or persons who recorded the popular songs of the 1950's under "The Platters" name and mark. Deception of the consuming public was the natural

and probable consequence of such statements and acts by defendants, as well as by reason of the manner in which defendants promoted their performance, the names which defendants used to identify their singing group, and the deliberate similarities between the format and style of the performances rendered by defendants' group and the format and style of the performances rendered by plaintiff's group.

13. Both plaintiff's singing group and defendants' singing group compete for the same kind of business, namely, the rendering of musical entertainment services in places of public entertainment, and both plaintiff's group and defendants' group appeal to the same type of consumers; namely, patrons at places of public entertainment.

14. After learning that defendants were using plaintiff's name and mark "The Platters," alone or in conjunction with other words, to designate defendants' singing group, plaintiff acted promptly to stop such use by defendants, first by written communications and then by commencing this action.

15. Although plaintiff allowed defendants to use the word "Platters" for a limited purpose and a limited time, plaintiff thereafter terminated the defendants' right to use the word "Platters" prior to the commencement of this action and plaintiff did not thereafter acquiesce in defendants' use of the name "Platters." Defendants' use of the name "New Century Platters" and of plaintiff's name and mark "The Platters," alone or in conjunction with other words, after the commencement of this action was not authorized or permitted by plaintiff.

16. Plaintiff has at no time abandoned its tradename and service mark "The Platters." Plaintiff's use of "The Platters" mark in conjunction with other words such as "Buck Ram and The Platters" and "Buck Ram Platters" is a permissible use of "The Platters" mark and does not constitute abandonment by plaintiff of its name and mark "The Platters."

17. Defendants' injury to plaintiff's name and mark "The Platters" was malicious.

*Conclusions of Law*

1. Plaintiff's tradename and service mark "The Platters," and the United States registration thereof, No. 959,115, are valid.

2. Defendants have infringed and contributorily infringed plaintiff's service mark "The Platters" in violation of 15 U.S.C. § 1114(1) and at common law.

3. By reason of the aforesaid acts of defendants in unlawfully adopting and using, and in inducing and causing others not authorized or employed by or associated in any way with plaintiff to make unauthorized use of plaintiff's tradename and service mark "The Platters," defendants have in interstate commerce, falsely designated the origin of entertainment services, falsely described such entertainment services, and have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such entertainment services, and have in interstate commerce, induced, caused and facilitated others not authorized or employed by or associated in any way with plaintiff, falsely to designate the origin of entertainment services and to make and use false representations in connection with the sale, offering for sale, promotion and advertising of such entertainment services, all in violation of 15 U.S.C. § 1125(a); and defendants have unfairly competed with plaintiff at common law.

4. Plaintiff's use of "The Platters" name and mark in association with a singing group was and is lawful even though the composition of that group has changed from time to time, because plaintiff has made no material misrepresentations to the consuming public as to the composition of its group, and therefore there has been no likelihood of confusion or deception of the consuming public by reason of any representations by plaintiff.

5. Because plaintiff has a valid tradename and service mark "The Platters," defendants had a duty to select a name which

would avoid all possible confusion between themselves and the plaintiff's singing group.

6. Because plaintiff terminated the permission it gave defendants to use "The Platters" name and mark, defendants' continued use of that mark after such termination constituted infringement of plaintiff's right in that mark.

7. There has been no laches or acquiescence on the part of plaintiff in enforcing its rights in "The Platters" name and mark against the defendants.

8. Defendant The New Century Corporation's pending cancellation proceeding No. 10,425 against plaintiff's registration of "The Platters" service mark in the United States Patent and Trademark Office is without merit.

9. Defendants' continued use of the names "New Century Platters," "The Platters," or "Platters" will cause irreparable injury to the plaintiff for which there is no adequate remedy at law.

10. Plaintiff is the prevailing party in this action and is entitled to recover costs but not attorneys' fees.

Following the jury trial in this case but prior to the issuance of this opinion, defendants have filed a motion for a new trial or in the alternative to alter or amend judgment, opposition to plaintiff's request for a judgment award of attorneys' fees and costs, opposition to plaintiff's proposed findings of fact and conclusions of law and final judgment and a motion for a stay of injunction. The court has fully considered the matters submitted by defendants, some of which have been ruled on in the course of this memorandum. The court does not find that a further hearing is necessary and at this time will dispose of the remaining requests. The motion for a new trial or in the alternative to alter or amend judgment will be denied. The motion for stay of injunction is based primarily upon the hardship that defendants will suffer if they are precluded from fulfilling various contractual obligations which they entered into as "The New Century Platters." The standards applicable to consideration of a stay pending appeal were considered in *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970), and are applicable by analogy to the present application. In the words of Judge Winter, writing for the court in *Long,*

> I must conclude that the principal irreparable injury which defendants claim that they will suffer if the order . . . is not stayed is injury of their own making. The defendant . . . has postponed the moment of truth as long as possible, but the moment of truth is now at hand. It would seem elementary that a party may not claim equity in his own defaults. No other sufficient reason appearing why the injunction should be stayed the motion for stay will be denied. *Id.* at 981.

Accordingly, judgment will be entered separately and the Clerk is directed to mail copies of the Memorandum and Judgment to counsel for the parties.

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE FIVE PLATTERS, INC. | |
| v. | CIVIL NO. 73–462–B |
| BERNARD PURDIE, et al | |

### JURY QUESTIONS

Question # 1—Did the five persons who recorded national hits under the name "The Platters" in 1954

and 1955 adopt and use that name as a service mark? Answer YES or NO in the space provided.

<u>YES</u>
Space for Answer

If, and only if, your answer to Question # 1 was YES, answer Question # 2.

Question # 2—Did Five Platters, Inc. acquire the right to use the service mark "The Platters" from the five persons mentioned in Question # 1? Answer YES or NO in the space provided.

<u>YES</u>
Space for Answer

If, and only if, your answer to Question # 2 was YES, answer Question # 3.

Question # 3—Has Five Platters, Inc. either because of uncontrolled use of the service mark or because the service mark has developed a generic meaning or because of misrepresentation of the composition of the singing group lost the right to exclusive use of the service mark "The Platters"? Answer YES or NO in the space provided.

<u>NO</u>
Space for Answer

If, and only if, your answer to Question # 3 was NO, answer Question # 4.

Question # 4—Have the defendants made unauthorized use of the word "Platters" so as to cause a likelihood of confusion among a significant number of persons in the consuming public? Answer YES or NO in the space provided.

<u>YES</u>
Space for Answer

If, and only if, your answer to Question # 4 was YES, answer Question # 5.

Question # 5—Has Five Platters, Inc. by its actions or inactions lost the right to enforce the service mark against the defendants in this case? Answer YES or NO in the space provided.

<u>NO</u>
Space for Answer

Regardless of your answers to Questions # 1 through # 5, answer Question # 6.

Question # 6—Have the defendants by the use of the word "Platters" attempted to mislead and deceive the consuming public concerning the origin or composition of its singing group? Answer YES or NO in the space provided.

<u>YES</u>
Space for Answer

Regardless of your answers to Questions # 1 through # 6, answer Question # 7.

Question # 7—Did Five Platters, Inc. intentionally cause the United States Patent Office to issue a registration for a service mark by means of knowingly false or fraudulent statements contained in the application for the registration? Answer YES or NO in the space provided.

NO
Space for Answer

If, and only if, your answer to Question # 5 was NO or your answer to Question # 6 was YES, answer Question # 8.

Question # 8—Do you find that the plaintiff is entitled to recover compensatory damages from the defendants? (If your answer is YES, the court will assess nominal damages in the amount of $1.00). Answer YES or NO in the space provided.

YES
Space for Answer

If, and only if, your answer to Question # 8 was YES, answer Question # 9.

Question # 9—In what amount, if any, do you assess punitive or exemplary damages in favor of the plaintiff against the defendants?

$3,000.00

(s) __Donald McIntyre__
Signature of Foreman

Date of Verdict: ___6/11/76___
Time of Verdict: ___9:00 P.M.___