**William Mullen BAKER, Plaintiff,**

v.

**Frederick R. PARRIS and Ernie Martinelli, Defendants.**

**No. 86 Civ. 1283 (WK).**

United States District Court, S.D. New York.

Nov. 12, 1991.

Michael Greene, Pollack & Greene, New York City, for defendants.

Albert Silbowitz, Cedarhurst, N.Y., for plaintiff.

## OPINION AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff and defendants both claim the right to use the service mark "The Five Satins," a "doo wop" vocal group,[1] based on their original affiliation with that group. Defendants move for summary judgment dismissing plaintiff's claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*,

---

1. "The Five Satins" are still in demand on the "oldies" circuit. For a definition of "doo wop," see *Rick v. Buchansky* (S.D.N.Y.1985) 609 F.Supp. 1522 at 1525, n. 1.

the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the common law, and for summary judgment granting their own counterclaims under the Lanham Act, New York State law, and common law. For the reasons that follow, both motions are granted.

## BACKGROUND

Sometime in 1955, five teenagers from New Haven, Connecticut gathered together to perform a new genre of music: doo wop. Defendant Parris,[2] though then also performing with another group called the "The Scarlets," was the first lead singer of this new group, "The Five Satins." Pl. 3(g) ¶¶ 3–4; Def. 3(g) ¶¶ 1–3; Pl. Exhs. B, E, & F.[3] Parris enlisted in the Army sometime in mid–1955, but while on leave before being stationed in Japan for most of 1956–57, wrote and performed lead vocals on a New Haven church basement recording for the Standord Record label of "I'll Remember," which very shortly became known as "In the Still of the Night." Pl. 3(g) ¶¶ 4, 5; Def. 3(g) ¶¶ 4, 5. This song has since become one of the most popular "oldies" ever. It is also "The Five Satins" signature song and greatest hit. Pl. Exh. F; Def. Aff. ¶ 30.

Parris returned from the Army in late 1957, and by 1958[4] began performing as lead singer for, among other groups, the one billed as "The Five Satins." Since then, Parris has continuously used that name—or some variation thereof, such as "Fred Parris and the Five Satins," "The Five Satins, featuring Fred Parris," or "The Five Satins." Parris' performances under "The Five Satins" name include those in "oldies revival shows" throughout the 1970s and in various hotels starting in or about 1977. Def. 3(g) ¶¶ 17, 18. In 1973 Parris applied for and received a trademark registration on "The Five Satins" from the United States Patent and Trademark Of-

fice. In his application he declared that "the service mark was first used … in June 1955; was first used in the sale or advertising of services rendered in commerce among the several states in June 1955 and is now in use in such commerce." Pl. Exh. H. The mark lapsed in 1981. Two years later Parris applied for a second registration, which he received in 1984. Def. 3(g) ¶¶ 15, 22. Parris, since at least 1983, has consistently asserted that he owns the exclusive right to the service mark "The Five Satins" and, by informing people in the music industry of that claimed exclusive right, has sought to prevent Baker from using the name. Pl. 3(g) ¶ 19; Def. 3(g) ¶¶ 27–29.

In early 1956 when Parris was in the army, plaintiff Baker joined "The Five Satins" and within two months became the group's lead singer. During his tenure "The Five Satins" released several records including the successful "To The Aisle," was pictured on the cover of *Rhythm & Blues* magazine, and toured widely. Pl. 3(g) ¶¶ 9, 10; Def. 3(g) ¶ 9; Pl. Exhs. B, E. Baker left "The Five Satins" in 1958, and until the late 1970s or early 1980s performed with a number of different bands, including "The Chestnuts" and "David and Goliath," and using his own name. Pl. Exhs. D, E, & F.

With respect to his status between the late 1950s and late 1970s or early 1980s, Baker has submitted: (a) his own affidavit; and (b) a variety of documents. Two paragraphs of his affidavit are relevant. Paragraph 12 provides:

After the dissolution [in 1959] of "The Five Satins," I continued performing under my name, as well as with other groups and individuals. Throughout the 1960s, 1970s, and to the present day I have always and continuously utilized

---

**2.** Defendant Ernie Martinelli has been Fred Parris' manager since 1981.

**3.** Unless otherwise specified, the facts here related are uncontroverted and drawn from plaintiff and defendants' statements pursuant to Local Civil Rule 3(g), their affidavits, and the exhibits annexed to their motion papers.

**4.** Although Baker contends that Parris "was not a member of the group from 1956 through 1959," Pl 3(g) ¶ 12, the documentary evidence Baker himself provides forces us to find that Baker left "The Five Satins" in early 1958 and shortly thereafter Parris resumed performing and recording with the group as lead singer. PL. Exhs. E, F.

the name "The Five Satins" in billing, promoting and advertising my performances and in attempts to obtain performing engagements.

On the other hand, paragraph 15 asserts:

By the late 1970s, I was being billed as "Bill Baker" or "Bill Baker of the Original Five Satins," or "Bill Baker's Fabulous Satins" ... The public and concert promoters, however, still associated me with "The Five Satins" and, as a result, my performances would typically be publicized as "Bill Baker of The Five Satins," "Bill Baker's Satins" or simply "The Five Satins" *despite my repeated remonstrances. By 1982,* my new group was increasingly referred to as "Bill Baker's Five Satins" ... and in response to continuing demands by my audiences and concert promoters, *I adopted th[at] name* ... and have continuously performed under such name to date."

(emphasis added).

The documents (which are attached as Exhibit E to Baker's opposition papers) include a 1975 magazine article about Baker by Victor Pearlin that reads in relevant part:

Few people are aware that Bill Baker was the lead singer for the Five Satins in 1956–57. A New Haven native, Bill is heard on five Ember [record label for "The Five Satins"] releases. Of these, only "To The Aisle" achieved any commercial success.

When Fred Parris returned from the Army in 1958, Bill stopped recording for a couple of years. In 1960, he recorded two records ... Bill was accompanied on these by the Chestnuts.

. . .

Finally in 1966, Bill teamed up with Roger Koob ... recording as David and Goliath.

The remaining documents, insofar as they seem to us to be at all relevant, are the following:

— An undated business card for "The Connecticut All–Star '50s & '60's Re-

view," on which below Baker's name appears "The Chestnuts/The Five Satins";

— An undated guest pass to a performance by a group called "The Originals" [5] that featured members of "The Five Satins," "The Chestnuts," and "The Scarlets." The card nowhere mentions Baker, and it is unclear whether he or Parris performed at that show;

— An undated promotional card for "Bill Baker" on which it is noted, in the smallest print appearing on the card, "as featured with the Five Satins";

— A promotional release for the "Connecticut All–Star Fifties & Sixties Revue, Starring Roger Koob and Bill Baker," on which it is stated that "Other songs this show band performs, formerly recorded by groups which included Bill Baker, are: ...—'Chestnuts'; ... 'The Five Satins'; and one of the biggest selling records in recorded history 'In The Still Of The Night'";

— An event schedule with the entry dated November 21, 1980 adverting to a "50's Hop, featuring Roger Koob of Premiums and Bill Baker of Five Satins"; and

— A September 5, 1971 program for the Connecticut Cancer Crusade that lists among the performers "Bill Baker," with no mention of "The Five Satins."

## DISCUSSION

*a. Parris' Motion for Summary Judgment Dismissing Baker's Claims*

 We hold for later discussion Baker's count VI (requesting punitive damages), counts III and IV (alleging Sherman Act violations), and counts II, VII, and VIII (seeking cancellation of Parris' Lanham Act registration). The remaining counts I and V (claiming Lanham Act and common

---

**5.** Because the pass is poorly photocopied, it is unclear whether the group is "The Original" or "The Originals"; the distinction, however, is unimportant.

law trademark infringement) require that Baker, as an initial matter, establish two things: (a) that he was the originator—i.e. first user—of the mark; and (b) that he has been a continuous user of the mark—i.e., that he did not abandon it by failing to use it over any considerable period of time. *See Rick v. Buchansky* (S.D.N.Y.1985) 609 F.Supp. 1522, 1531 (it is axiomatic that "rights in a trademark or service mark are acquired through appropriation and use of the mark in commerce"), *Kingsmen v. K–Tel Int'l Ltd.* (S.D.N.Y.1983) 557 F.Supp. 178, 181. For the definition of abandonment, see 15 U.S.C. § 1127 ("A mark shall be deemed 'abandoned'—(a) [w]hen its use has been discontinued with intent not to resume.... Nonuse for two consecutive years shall be prima facie abandonment"); *see also Rick*, 609 F.Supp. at 1540, *Kingsmen*, 557 F.Supp. at 183.

■ There is clearly room for dispute as to whether Baker or Parris was the originator or first user of the mark. Accordingly, if that were the only issue we should have to deny Parris' motion for summary judgment. However it is beyond dispute that Baker can show no use of the mark from the time he left "The Five Satins" in 1958 to when "by 1982" he "adopted" the name. While in the first of the two quoted paragraphs of his affidavit Baker claims to have "continuously utilized" the name during the 1960s and 1970s, this claim is refuted in the second quoted paragraph. The latter paragraph specifically assures us that any pre–1980 use of his name in connection with that of "The Five Satins" was over his "repeated remonstrances." Moreover, the documents Baker submits are consistent with the second rather than the first of these paragraphs. The magazine article specifically fixes his connection to "The Five Satins" as occurring in 1956–58. It further observes that after Parris' return from the army, Baker "stopped recording for a couple of years" and then associated himself with other names and organizations. The remaining submitted items do nothing to negate these clear assertions.

Thus it is apparent from the evidence submitted by Baker that he cannot establish use of the mark during the period between the late 1950s and late 1970s or early 1980s, and therefore can make no claim to the mark that Parris could have infringed. Accordingly, we grant Parris' motion to dismiss counts I and V.

### b. *Parris's Counterclaims*

■ Parris claims that he holds the exclusive right to the service mark "The Five Satins" and that Baker infringed on it by holding himself out to the music industry and public as "The Five Satins." Such infringement, he asserts, both confuses the public as to which of "The Five Satins" groups is genuine [6]—and which it might expect to see at a show—and also takes from defendants bookings they legitimately expect to receive. Moreover, he claims that this behavior is unfair competition and dilutes his distinctive mark.

There is no dispute in the pleadings that Parris has continuously used the mark "The Five Satins" since at least 1959. Moreover, as we held above, there can be no dispute that Baker did not continuously use the mark. Finally, Parris' registration of the mark with the United States Patent and Trade Office is "prima facie evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the registered mark in trade," 15 U.S.C. § 1115(a); *see also Marshak v. Sheppard*, (S.D.N.Y.1987) 666 F.Supp. 590, 597 [*Sheppard*]; *Rick*, 609 F.Supp. of 1529; *Marshak v. Green*, (S.D.N.Y.1981) 505 F.Supp. 1054, 1060 [*Marshak*].[7] Be-

---

6. The essence of a Lanham Act or common law trademark claim is infringing behavior that is likely to or actually confuses the public. *Stetson v. Wolf* (S.D.N.Y.1991) 1991 WL 149753 at *1, 1991 U.S.Dist. Lexis 10319 at *3, *Marshak v. Sheppard* (S.D.N.Y.1987) 666 F.Supp. 590, 600–01, *Rick v. Buchansky* (S.D.N.Y.1985) 609 F.Supp. 1522, 1529, *Marshak v. Green* (S.D.N.Y.1981) 505 F.Supp. 1054, 1058, *Five Plat-*

ters, *Inc. v. Purdie* (D.Md.1976) 419 F.Supp. 372, 381.

7. This registration, moreover, gives Parris a presumption of right that imposes on Baker, in essence, the burden of "persuad[ing] the Court that [Parris] does *not* own the service mark." *Rick*, 609 F.Supp. at 1531.

cause Baker has failed to raise a genuine issue of material fact to challenge either Parris' claim of continuous use of the name, or prima facie right in it, we find that Parris indeed owns "The Five Satins" mark. Having so found, we must afford him the protection his exclusive right in the name merits.

■ Counterclaims I and II allege Baker's violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1117 and 1125(a).[8] Because Baker freely admits his use of the mark "The Five Satins," and because it is self evident that two groups bearing the "The Five Satins" name will cause confusion, we find that he has infringed on Parris' registered service mark and is liable to Parris under the Lanham Act. We therefore grant summary judgment on these counterclaims.

■ Counterclaim III asserts trademark and tradename infringement under the common law and The New York State General Business Law § 368–b. The New York State Court of Appeals has applied essentially the same standard to claims brought under the Lanham Act (15 U.S.C. § 1114(1)), New York State law (General Business Law § 368–b), or common law (unfair competition). *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.* (1977) 42 N.Y.2d 538, 399 N.Y.S.2d 628, 631, 369 N.E.2d 1162, 1165. Since we have found that Baker has infringed on Parris' mark under the Lanham Act, he has necessarily also done so under New York State and common law, and we grant summary judgment on counterclaim III.

■ Counterclaim IV asserts dilution of the "distinctive quality" of Parris' "The Five Satins" service mark. New York's anti-dilution statute, GBL § 368–d, protects service marks from a different sort of harm than infringement:

"The evil which the Legislature sought to remedy was not public confusion caused by similar ... services ... but a cancer-like growth of dissimilar ... services which feeds upon the business reputation of an established distinctive trademark or name ... The harm that § 368–d is designed to prevent is the gradual whittling away of a firm's distinctive trademark or name."

*Allied,* 399 N.Y.S.2d at 632, 369 N.E.2d at 1165. *See also Sheppard,* 666 F.Supp. at 602–03; *Rick,* 609 F.Supp. at 1545; *Marshak,* 505 F.Supp. at 1058, n. 9.

Because it is undisputed that both Baker and Parris are using the name "The Five Satins," it is clear that persons hiring Baker's group will receive a different performance and different sound than the one they expected from Parris' group. This result is not only confusing, but constitutes a "whittling away of [Parris'] distinctive" performance and sound, which is at the heart of his service mark, in violation of § 368–d. Summary judgment on Parris' counterclaim IV is therefore granted.

#### c. *Baker's Remaining Claims*

As we concluded earlier in granting Parris's motion for summary judgment dismissing counts I and V, the evidence before us could permit no reasonable jury to find that Baker continuously used the name "The Five Satins" between the late 1950s and late 1970s or early 1980s in any way that could give him a right in the service mark. We have also found that Parris in fact owns the mark.

■ Accordingly, turning to Baker's remaining claims, we now grant Parris' motion to dismiss to Baker's claims III and IV under the Sherman Act. That act al-

---

**8.** Section 1114(1) creates liability in:
"[a]ny person who shall, without the consent of the registrant—(a) use in commerce any reproduction ... or colorable imitation of a registered mark in connection with the sale, distribution, or advertising of any ... services ... which use is likely to cause confusion, or cause mistake or to deceive."

Section 1117 describes the relief available for a § 1114 violation.
Section 1125(a) creates liability in:
"[a]ny person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation."

lows the holder of a trademark a monopoly in that mark, so long as it is not otherwise used in violation of the statute. See 15 U.S.C. § 1, *Susser v. Carvel Corp.* (S.D.N.Y.1962) 206 F.Supp. 636, 641–43. Since Parris' actions were legitimately in defense of his service mark and served no conceivable illegal purpose, these Claims are without merit. And, since there has been no violation and thus no harm to remedy, we dismiss Baker's claim VI for punitive damages.

■ Baker also claims in counts II, VII, and VIII that Parris violated the Lanham Act 15 U.S.C. §§ 1119, 1120 [9] by making false or fraudulent statements in his trademark application, and his registration in the mark should therefore be cancelled. Because these claims arise separately from the competing claims of right in the mark, we address them specifically. Baker contends that "The Five Satins" began as a partnership in which each member had an equal right in the name. Parris, even though he abandoned both the group and his right in the mark when he went to Japan for two years, falsely declared on both his 1973 and 1984 registration applications to the Patent and Trademark Office that he has used the mark continuously since 1955, that he is the owner of the mark, and that no one else has the right to use the mark.

We find that these claims must fail because Baker has not adduced any evidence to raise a question of fact that Parris' declaration is false or, even if inaccurate, that it meets the standard for cancellation. "[M]isstatements in a registration application provide a basis for cancelling the registration only if the misstatements (1) were made with *knowledge* of their falsity, and (2) were *material* to the determination to grant the application." *Rick,* 609 F.Supp. at 1537 (emphasis in original) (*citing Five Platters, Inc.* 419 F.Supp. at 384); *see also Sheppard,* 666 F.Supp. at 598.

The only evidence we have before us that Parris' statement of continuous use since 1955 might be false is the 1983 application, which we find determinative over Baker's contentions in his affidavit. Parris' declaration in the application that "the service mark was first used ... in June 1955 ... and is now in use in such commerce," Pl. Exh. H, contains no claim of continuous use from 1955. Thus Parris here made no false or fraudulent statement.

Baker's challenge to Parris' declaration of ownership and sole right to the mark likewise cannot survive his own pleadings and exhibits. The existence of another person claiming a right to the service mark at the time of Parris' 1973 application, a copy of which is not before us, would indeed have been "*material* to the determination to grant the application," *Rick,* 609 F.Supp. at 1537. However, there is no evidence before us to suggest that Parris had "*knowledge*" of any such other claim. Baker does not suggest that Parris knew in 1973 of Baker's partnership theory,[10] which would give each original member of the group an equal claim to the name, nor that if Parris considered "The Five Satins" a partnership, he believed that Baker was a member of the group. Thus it is entirely consistent with Parris' application declaration that he could claim exclusive right to the service mark "The Five Satins," while at the same time Baker might correctly

---

**9.** These sections read in relevant part:
 In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations ...
 15 U.S.C. § 1119.
 Any person who shall procure registration in the Patent and Trademark Office of a mark by false or fraudulent declaration or representation ... shall be liable in a civil action by any person injured thereby.
 15 U.S.C. § 1120.

**10.** As proof that the group was in fact a partnership he proffers the first page of a 1981 civil complaint in which Parris claims that he and three other early members of "The Five Satins" were "[a]t all times hereinafter mentioned ... a partnership doing business under the trade name and style The Five Satins." Pl. Exh. G. However, that single sheet does not state when those "times hereinafter mentioned" were, nor does the complaint include Baker in the partnership. The complaint is thus insufficient to show that a partnership existed in 1956–1958 when Baker was a member of "The Five Satins," or that Parris ever thought of the group as a partnership before 1981.

have believed that the mark was owned equally by all the partners.

More importantly, as we held *supra,* Baker did not continuously use the mark, nor ever hold himself out as "The Five Satins" before the late 1970s or early 1980s, so there is no evidence to suggest that Parris in 1973 had notice that Baker was asserting a claim to the name.

### Conclusion

Having found that Parris owns the service mark "The Five Satins" and having granted Parris' motion for summary judgment dismissing Baker's claims and granting his counterclaims, we instruct the parties to appear before us on December 9, 1991 at 4:30 p.m. for a conference as to appropriate relief.

SO ORDERED.